IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 12-cv-02917-REB

GREGORY BELL,

      Applicant,

v.

FRANCIS FALK, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

Blackburn, J.

      This matter is before me on the *pro se* Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 ("Application") [# 1],[1] filed November 6, 2012, by

Applicant Gregory Bell.  Respondents answered the Application [# 22], and Applicant

filed a traverse [#25].  After reviewing the pertinent portions of the record in this case

including the Application, the Answer, the Traverse, and the state court record, I

conclude that the Application should be denied.

## I.  BACKGROUND

      Applicant is serving multiple sentences in the Colorado Department of

Corrections based on his 2001 convictions in the District Court, Arapahoe County,

---

[1]"[# 1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

Colorado, for attempted first-degree murder; two counts of attempted second-degree murder; three counts of second-degree kidnapping; three counts of aggravated robbery; and, several other offenses.[2]  The following summary of relevant facts is taken from the Colorado Court of Appeals decision on direct review of Applicant's conviction:

In one afternoon, [Applicant] threatened at lease nine different people with a handgun, shot one of them, robbed or attempted to rob nearly all the victims, forced victims to drive him across town at gunpoint, broke into a home, and assaulted a police officer.

[Applicant's] criminal activity began at a plasma donation center, where he approached a recent donor and demanded twenty dollars. When the donor did not immediately comply, defendant threatened a nearby employee with a handgun. The donor then complied, and defendant left and walked several blocks away.

[Applicant] approached a man sitting in a vehicle and demanded money and cigarettes from him. When the man did not comply, [Applicant] forced a handgun into the man's mouth. At this point, the man's mother returned to the car, and [Applicant] forced her into the vehicle. They drove several blocks until [Applicant] held a gun to the mother's head and demanded all her money. The mother complied, and then she and her son fled the vehicle. [Applicant] fired his gun at the victims as they ran away. [Applicant] then approached another man and pointed the gun at his head. Eventually, [Applicant] left this man and approached another man sitting in a nearby vehicle. [Applicant] forced this man to drive him to a nearby trailer park where [Applicant] placed the man in a headlock, burst into a mobile home, and threatened to shoot the man in the headlock if the occupants did not give him their money. Instead of complying with [Applicant's] demand, one of the occupants attempted to disarm [Applicant], and a struggle ensued. During the struggle, [Applicant]  broke free and attempted to shoot one of the occupants, but the gun did not fire. [Applicant] then ran from the home, and two occupants chased him. Just before they managed to subdue him, [Applicant] fired the gun and shot one of the occupants in the arm. When the police arrived, [Applicant] assaulted a police officer but was eventually subdued.

[Applicant] pleaded not guilty by reason of insanity. Trial was held under the unitary procedure of §16-8-104.5, C.R.S. 2004.  The

_____

[2]State Court R., Court File, Vol. 1 (jury verdicts), at 201-252; (mittimus), at 264-65.

> prosecution called several witnesses to the events and a psychiatrist, who testified that in his expert opinion defendant was not insane. [Applicant] did not call any witnesses. The trial court rejected [Applicant's] tendered instructions regarding his insanity defense, finding: "There is no evidence whatsoever in this case that would support submitting the issue of sanity to the jury. The presumption of sanity was not rebutted in the slightest by any evidence." The jury found [Applicant] guilty of the aforementioned offenses.

*People v. Bell* (*Bell I*), No. 02CA1255 (Colo. App. Nov. 10, 2004) (unpublished) [# 13-7, at 3-4].

The Colorado Court of Appeals affirmed Applicant's convictions and sentences on direct appeal. [# 13-7]. The Colorado Supreme Court denied Applicant's petition for certiorari review on May 16, 2005. [# 13-5].

On November 23, 2005, Applicant filed a motion for post-conviction relief under Crim. P. 35(c) ("Rule 35(c)"), which was denied summarily by the trial court on December 27, 2005. [# 13-1, at 35]. Applicant did not appeal.

On January 18, 2006, Applicant filed a second Rule 35(c) motion alleging ineffective assistance of trial counsel. The trial court appointed post-conviction counsel. Appointed counsel then withdrew, at which time the court denied the motion summarily. However, on reconsideration, the court ordered a hearing. [# 13-1, at 29, 33-34]. After several continuances, the court heard the motion in May 2011. [*Id.* at 24]. The trial court denied Applicant's claims in an order dated June 3, 2011. [# 13-4]. The Colorado Court of Appeals affirmed the trial court's order on September 13, 2012 in *People v. Bell* (*Bell II*), No. 11CA1437 (Colo. App. Sept. 13, 2012) (unpublished) [# 13-2].

Applicant initiated this action on November 6, 2012. He asserts two claims in the Application: (1) the trial court violated his due process right to a fair trial by failing to

3

instruct the jury on the affirmative defense of insanity; and (2) his trial counsel was constitutionally ineffective in failing to: (a) investigate the case and present evidence which would have supported a jury instruction on the affirmative defense of insanity; (b) retain an expert witness to testify as to Applicant's temporary insanity; and, (c) in preventing Applicant from testifying in his own defense by advising him incorrectly that his juvenile convictions could be used against him.  [# 1, at 6-7].

Respondents concede that the Application is timely pursuant to the AEDPA one-year limitation period, 28 U.S.C. § 2244(d)(1). [# 13,at 6-8].   Respondents further concede that Applicant fairly presented his claims to the Colorado Court of Appeals on direct review or in the state post-conviction proceeding.  [*Id.*, at 15, 18].  In a previous order, Senior District Judge Lewis T. Babcock rejected Respondents' contention that Applicant failed to exhaust state remedies for his claims because he did not present them to the Colorado Supreme Court in a petition for certiorari review.  [# 17, at 6]. Instead, Judge Babcock found that the claims have been exhausted.  [*Id.*].  I thus address the merits of Applicant's claims below.

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  *Id*. at 784.  Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id*. at 784-85.  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Id*. at 784.  In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated."  *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [the court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id*. at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims."  *Id*.

5

The *Richter* presumption is also applicable when a state-court opinion addresses some but not all of those claims. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013). For purposes of § 2254(d), when a state court rules against a defendant in an opinion that rejects some of the defendant's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Id.* at 1094-96. Federal habeas courts should not assume that any unaddressed federal claim simply was overlooked because a state court does not uniformly discuss separately every claim referenced by a defendant. *Id.*

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable."  *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."  *Maynard*,

468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity. The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted).  In conducting this analysis,

the court "must determine what arguments or theories supported or . . . could have

supported[ ] the state court's decision" and then "ask whether it is possible fairminded

jurists could disagree that those arguments or theories are inconsistent with the holding

in a prior decision of [the Supreme] Court."  *Id.*  Moreover, "review under

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the

claim on the merits."  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an
> error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C.

§ 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).

Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the

relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## B. PRO SE LITIGANT

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  An applicant's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

9

### III.  MERITS OF THE CLAIMS

**A.  Due Process Claim**

For his first claim, Applicant asserts that the trial court's failure to instruct the jury

on the affirmative defense of insanity violated his federal due process right to a fair trial.

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to

present a complete defense.'" *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993) (internal

quotations omitted).  Although the Supreme Court has invoked this principle in cases

dealing with "the exclusion of evidence" or "the testimony of defense witnesses," it has

never done so in a case involving "restrictions imposed on a defendant's ability to

present an affirmative defense."  *Id.*  In *Gilmore*, the Supreme Court rejected the

petitioner's arguments that "the right to present a defense includes the right to have the

jury consider it, and that confusing instructions on state law which prevent a jury from

considering an affirmative defense therefore violate due process."  *Id.* (quotations and

citations omitted).  The Court concluded that such an "expansive reading" of Supreme

Court precedent would "make a nullity of the rule . . .  that instructional errors of state

law generally may not form the basis for federal habeas relief."  *Id.* at 344 (citing *Estelle*

*v. McGuire*, 502 U.S. 62 (1991)).  *See also Kaiser v. Nelson*, No. 00–3016, 2000 WL

1125608, at *6 (10th Cir. Aug. 9, 2000) (relying on *Gilmore* to find that a habeas

petitioner's constitutional right to present a defense did not include the right to an

instruction on the defense of withdrawal).

A claim that the trial court erred in refusing to give a state law defense instruction

is not reviewable in a federal habeas proceeding unless the error was so fundamentally

unfair as to deprive the petitioner of a fair trial and due process of law.  *See Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999) (citing *Henderson v. Kibbe*, 431 U.S. 145, 156-57 (1977) (addressing the omission of a jury instruction on causation); *see also Spears v. Mullin*, 343 F.3d 1215, 1244 (10th Cir. 2003) (stating that federal habeas court "review[s] the alleged error in failing to instruct on voluntary intoxication in the context of the entire trial, only for the denial of fundamental fairness and due process") (citing *Henderson*)).

To determine whether the state trial court's refusal to deliver an instruction on the affirmative defense of insanity violated Applicant's federal constitutional right to due process, the Court must consider whether, under Colorado law, he was entitled to such an instruction.  *Tyler*, 163 F.3d at 1227.

At the conclusion of the presentation of evidence at Applicant's trial, the state trial court ruled that "there is no evidence whatsoever in this case that would support submitting the issue of insanity to the jury."[3]  The trial court thus refused Applicant's tendered jury instructions on the affirmative defense of insanity.[4]

On direct appeal, the Colorado Court of Appeals upheld the trial court's refusal to instruct the jury regarding the affirmative defense of insanity.  Before analyzing Applicant's evidence, the state appellate court set forth the following applicable state law principles:

> A defendant is legally insane if he or she is so diseased or
> defective in mind at the time of the commission of the act as to be

---

[3]State Court R. 2/08/06 Trial Tr., at 3.

[4]*Id.* at 3-4.

11

incapable of distinguishing right from wrong or suffers from a mental disease or defect that prevents him or her from forming a culpable mental state that is an essential element of a crime charged. Section 16-8-101.5, C.R.S. 2004. Insanity is an affirmative defense to a crime, §§ 18-1-802, 18-1-805, C.R.S. 2004, and absent legislative intent to the contrary, the procedure for resolving the affirmative defense of insanity is the same as for other affirmative defenses. [State case law citation omitted].

An affirmative defense does not become a jury question until some credible evidence raising the defense is admitted. . . . [U]nder § 16-8-105.5, C.R.S. 2004, the court must determine whether some credible evidence of insanity has been admitted before the issue may be submitted to the jury.

[*Bell I*, # 13-7, at 5-6].

The Colorado Court of Appeals then considered Applicant's evidence: the testimony of two lay witnesses and part of the testimony of the psychiatrist called by the prosecution. The state appellate court summarized the evidence as follows:

One lay witness testified that shortly before defendant attacked him, he noticed defendant standing in the middle of the street, looking agitated. The witness thought this behavior was abnormal. The second lay witness testified that when she called the police, she described defendant as a "crazy black man." In response to a defense question about whether she thought defendant was acting crazy at the time, the witness answered, "Not like insanity crazy, but just crazy as in general, yes." She also testified that she though defendant was acting "bizarre."

[*Id.* at 6-7].

The Colorado Court of Appeals determined that the lay witness testimony did not tend to show that Applicant was insane at the time of the crimes because "neither lay witness purported to have knowledge of defendant's mental condition before or during the incident" and "neither witness offered an opinion of defendant's mental condition." [*Id.* at 7-8]. The state appellate court found that the witnesses' descriptions of defendant's anger and antisocial conduct "did not show that defendant was unable to

12

distinguish right from wrong or to form the requisite intent."  *See* §16-8-101.5(a) (a) - (b),

2(a), C.R.S. (2004) (A defendant is not legally insane if his or her abnormality is

manifested only by repeated criminal or otherwise antisocial conduct or if his or her

actions are induced by "moral obliquity, mental depravity, or passion growing out of

anger, revenge, hatred, or other motives and kindred evil conditions.").  [*Id.*].

Applicant also relied on the following portions of the psychiatrist's testimony to

support his insanity defense:

> The doctor testified that defendant was mildly to moderately
> depressed during the offenses and that a combination of depression and
> defendant's alcohol use could have caused the "surrendering of some
> about of critical judgment."  The doctor relied on reports from other
> physicians who had diagnosed defendant as suffering from major
> depression, borderline personality disorder, paranoid personality disorder,
> and mild retardation.  He also testified that in the past, defendant had
> suffered a mild head injury and had a significant history of neglect and
> abuse.

> Nevertheless, the psychiatrist testified that defendant was capable
> of distinguishing right from wrong, that he could formulate specific intent
> for the crimes, and that he was legally sane at the time of the offenses.

[*Id.* at 8-9].

The state appellate court rejected the Applicant's argument that the jury could

have disregarded the psychiatrist's opinion and used the background evidence and the

lay witness testimony to find defendant insane:

> . . . [E]vidence of a defendant's history of mental illness, various
> abnormal behaviors while in a mental health facility, and strange behavior
> immediately preceding a criminal act, is insufficient to support an insanity
> defense where the defendant has offered no evidence that at the time of
> the offense he or she was unable to distinguish right from wrong or to form
> the requisite intent. [State case law citation omitted].

> Here, while the lay and expert testimony was relevant and
> admissible as part of the broad inquiry into defendant's mental condition, it

13

> did not show that he was unable to distinguish right from wrong or to form
> the requisite intent. . . . Therefore, the trial court properly refused to
> instruct the jury regarding the affirmative defense of insanity.

[*Id.* at 9-10].

As discussed previously, no Supreme Court case holds that a criminal defendant is constitutionally entitled to an instruction on his theory of the case.  Applicant must therefore show that the state appellate court's resolution of his claim was an unreasonable application of *Henderson*, such that the failure to give the requested instruction deprived him of a fair trial.  The state courts' factual finding that there was no credible evidence presented to the trial court to substantiate a finding of insanity are presumed correct in this habeas proceeding, are supported by the state court record,[5] and have not been rebutted by the Applicant.  Because Applicant failed to make the requisite showing of legal insanity under state law, he necessarily cannot establish that the state trial court's failure to instruct the jury on the affirmative defense of not guilty by reason of insanity was so fundamentally unfair as to constitute a deprivation of his federal due process rights.

I find that the state appellate court's resolution of Applicant's claim was a reasonable application of federal law and comported with the evidence presented in the state court proceeding.  To the extent Applicant takes issue with the state appellate court's proper application of state legal standards, the federal habeas court does not review state court determinations of state law.  *See Estelle*, 502 U.S. at 67-68 (reemphasizing that "it is not the province of a federal habeas court to reexamine

---

[5]*See* State Court R. 2/6/06 Trial Tr., at 150, 218, 220; 2/7/06 Trial Tr., at 145-102.

state-court determinations on state-law questions.").  Applicant thus cannot prevail on his first claim for relief.

## B.  Ineffective Assistance of Counsel Claim

For his second claim, Applicant asserts that his trial counsel was constitutionally ineffective in failing (a) to investigate the case and present evidence which would have supported a jury instruction on the affirmative defense of insanity; (b) to retain an expert witness to testify as to Applicant's temporary insanity; and, (c) in preventing Applicant from testifying in his own defense by advising him incorrectly that his juvenile convictions could be used against him.  [# 1, at 6-7].

To prevail on a claim of ineffective assistance of counsel, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).  Under the AEDPA standard of review, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S.Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different.

*Strickland*, 466 U.S. at 693.  The likelihood of a different result must be substantial, not just conceivable.  *Id.*  I need not address both prongs of the *Strickland* inquiry if Petitioner's claim fails on one.  *Id.*  at 697.

## 1.  Facts relevant to claims 2(a) and 2(b)

At the evidentiary hearing, the state district court heard testimony from several witnesses and made the following relevant factual findings in its written order:[6]

- "Constance Bell, [Applicant's grandmother], admitted that her memory is no longer 'that good'" and her testimony "did not support Applicant's ineffective assistance of counsel claim in any way."

- "On the date of the offense, . . . Birdella Carter came into contact with [Applicant].  When she saw [Applicant], he was 'on his way' to being intoxicated' . . . and 'seemed different' that day. . . . Ms. Carter recalled seeing a bottle of alcohol and smelling marijuana in [Applicant's] presence. . . .'"

- "The Court treats [Applicant's] offer of proof as testimony provided by Andre Bell, [Applicant's cousin], that he spent most of August 12, 2000 with [Applicant], that the marijuana [Applicant] was consuming that day was laced with 'sherm'[7] without [Applicant's] knowledge, and that [Applicant's] 'mental state attitude' changed over the day as [Applicant] became paranoid and scared that his life was in danger."

- "Mr. Stavish [Applicant's trial counsel], admitted that he did not interview any of the witnesses called by [Applicant] at the [post-conviction evidentiary] hearing.  However, contrary to [Applicant's] contention, he did not receive a list of their names from [Applicant]. . . . Mr. Stavish explained that he did not interview these witnesses regarding [Applicant's] mental state on the date of offense because he was not aware that they had information that would be of assistance to the defense of insanity.  Had these witnesses been available and had they been able to provide

---

[6]Findings that are taken verbatim from the state court order are set forth in quotations, while other findings are summarized.

[7]According to the state district court's order, "a sherm stick is apparently slang for a cigarette (or possibly a joint or blunt) that has been immersed in a solution of phencyclidine (PCP) and allowed to dry. *See generally*  www.wikipedia.org/wiki/Sherm." [# 13-4, at 16].

information relevant to the issue of sanity, he would have contacted them."

- Mr. Stavish retained an expert, Dr. Suzanne Pinto-Bernhard, to evaluate Applicant before trial.  Counsel had hoped that Dr. Pinto-Bernhard would either testify at trial or that her report would help him convince the prosecution to extend a plea offer to Applicant.  Following her evaluation, Dr. Pinto-Bernhard did not make a finding that Applicant was insane or had an impaired mental condition.  Thus, Mr. Stavish did not call her to testify at Applicant's trial.

- Three experts evaluated Applicant before trial and documented their findings in written reports: Dr. Pinto-Bernhard, Dr. Frederick Miller, and Dr. Paul Mattox.  None of these experts opined that Applicant was insane or suffered from an impaired mental condition.

- "Mr. Stavish explained that, notwithstanding Dr. Miller's ultimate conclusion, he had endorsed him as a witness and planned to call him at trial.  He did not call him because the People called him during the case in chief."

- Mr. Stavish testified that because none of the expert witnesses was willing to testify that Applicant was insane, his trial strategy "was to argue that there was evidence of impaired mental condition and to try to persuade the [trial court] to give the jury an instruction on the issue of insanity.  He could then try to convince the jury that there was evidence of impaired mental condition or some evidence of insanity even though no expert witness was willing to say so.  He planned to argue to the jury that the prosecution had failed to prove Applicant was not insane or that Applicant did not have an impaired mental condition."

[# 13-4, at 15-18].[8]

### 2.  analysis of claim 2(a)

Applicant first contends that his trial counsel rendered constitutionally deficient performance by failing to investigate the case and present evidence which would have supported a jury instruction on the affirmative defense of insanity.

The state district court determined that Applicant failed to show that the

---

[8]*See also* State Court R., 5/11/11 Tr. of Post-Conviction Hrg., at 1-53.

investigation conducted by trial counsel fell below an objective standard of reasonableness. [# 13-4, at 23].  The state court found that defense counsel elicited some testimony at trial, both from lay witnesses and from the People's psychiatrist, in support of Applicant's plea of not guilty by reason of insanity.  [*Id.*].  The district court ruled that counsel's failure to interview the witnesses who testified at the post-conviction evidentiary hearing, without more, "is insufficient to overcome the strong presumption that [counsel's] pretrial investigation fell within the wide range of reasonable professional assistance." [*Id.* (internal quotation marks and citation omitted)].  The district court further found that neither Defendant, nor his mother, provided counsel with the names of the witnesses before trial.  [*Id.* at 16, 23].

The state court further determined that Applicant's ineffective assistance of counsel claim also failed on the prejudice prong of the *Strickland* inquiry.  The court found that the evidence presented at the post-conviction hearing "does not establish that [Applicant] suffered from a mental disease or defect on the date of offense, much less from a mental disease or defect that rendered him incapable of distinguishing right from wrong or of forming the prerequisite culpable mental states for the offenses with which he was charged."  [*Id.* at 25].

The Colorado Court of Appeals applied *Strickland* and concluded: "The record supports the district court's findings of fact, and the district court applied the correct legal standard in reviewing each of defendant's ineffective assistance of counsel claims. [state case law citation omitted]." [*Bell II*, # 13-2, at 7].  The state appellate court adopted the state district court's rulings and reasoning in their entirety and affirmed the district court's order.  [*Id.*].

18

I find that the state appellate court correctly analyzed Applicant's ineffective assistance of counsel claim under the *Strickland* standard and reasonably concluded that Applicant failed to show that his counsel's performance was objectively unreasonable or that he was prejudiced by counsel's failure to call at trial the witnesses who testified at the post-conviction evidentiary hearing.

The state district court's finding that Applicant did not provide defense counsel with the names of the lay witnesses who testified in the state post-conviction proceeding is presumed correct under the AEDPA standard of review.  Applicant does not point to any clear and convincing evidence in the record to show otherwise. Counsel cannot be faulted for failing to conduct a particular investigation when counsel is not advised of the names of relevant witnesses.  *See*, *e.g.*, *Evans v. Bowersox*, 184 F.3d 744, 756-57 (8th Cir. 1999) (counsel had no basis to investigate witness or second gun because the defendant never mentioned them); *Dooley v. Petsock*, 816 F.2d 885, 890-91 (3rd Cir. 1987) ("A trial counsel cannot be ineffective for failing to raise claims as to which his client has neglected to supply the essential underlying facts when those facts are within the client's possession; clairvoyance is not required. . . .").

Furthermore, Applicant was not prejudiced by counsel's failure to investigate because the lay witness testimony presented at the state post-conviction hearing failed to show that Applicant suffered from a mental disease or defect on the date of offense that rendered him incapable of distinguishing right from wrong or of forming the prerequisite culpable mental states for the charged offenses.  And, none of the three expert witnesses who evaluated Applicant before trial opined that Applicant was insane at the time of the offenses.  *Strickland* requires that an attorney conduct reasonable, not

19

exhaustive investigations.  *See*, *e.g.*, *Rompilla v. Beard*, 545 U.S. 374, 382-83 (2005)

("The duty to investigate does not force defense lawyers to scour the globe on the off-

chance something will turn up; reasonably diligent counsel may draw a line when they

have good reason to think further investigation would be a waste."); *Bullock v. Carver*,

297 F.3d 1036, 1046 (10th Cir. 2002) ("[W]here it is shown that a particular decision

was, in fact, an adequately informed strategic choice, the presumption that the

attorney's decision was objectively reasonable becomes "virtually unchallengeable.'")

(internal citation omitted).

Applicant argues in his Reply brief that the trial court failed to properly account

for Mrs. Bell's failing memory over time and had defense counsel interviewed Mrs. Bell

before trial, she would have testified as to his mental impairment. [# 25, at 4].  However,

there is no evidence in the record to support this contention, other than Applicant's

unsubstantiated assertions.  Allegations based on unsubstantiated assertions of fact are

not sufficient to satisfy *Strickland*.  *See Cummings v. Sirmons*, 506 F.3d 1211, 1228-29,

31-32 (10th Cir. 2007).

Applicant also contends that defense counsel was ineffective in failing to call Dr.

Pinto-Bernhard, the expert retained by the defense, to testify at trial about Applicant's

impaired mental condition.  Under Colorado law, "even where evidence of a defendant's

[mental health problem] does not reach the threshold requirements of the affirmative

defense of not guilty by reason of insanity, the defendant may still introduce such

evidence to factually counter or contest whether the defendant formed the requisite

mental state." *People v. Vanrees*, 125 P.3d 403, 405 (Colo. 2005); *see also People v.

Requejo*, 919 P.2d 874, 876 (Colo. App. 1996).  In this case, however, Applicant cannot

20

show that he was prejudiced by Dr. Pinto-Bernhard's failure to testify.

Dr. Pinto-Bernhard, a Ph.D. and licensed psychologist, performed a psychological evaluation of Applicant and set forth her findings and opinions in a written report dated January 23, 2001.  At trial, defense counsel cross-examined Frederick M. Miller, M.D., the psychiatrist who testified for the prosecution, about Dr. Pinto-Bernhard's written diagnoses of Applicant.[9]  I have reviewed Dr. Pinto-Bernhard's written report[10] and find that there is no additional information in the report that would have created a reasonable probability that Applicant would have been acquitted on all or some of the charges if the psychologist had testified for the defense.   A mere possibility that the outcome of trial would have been different if counsel called Dr. Pinto-Bernhard as a witness is not sufficient to demonstrate prejudice.  *See Strickland*, 466 U.S. at 693 (the likelihood of a different result must be substantial, not just conceivable).  As such, I find that Applicant cannot prevail on claim 2(a).

### 3.  analysis of claim 2(b)

Applicant next asserts that his trial counsel was constitutionally ineffective in failing to retain an expert witness to testify as to Applicant's temporary insanity during the commission of the charged offenses.

In the written order denying Applicant's motion for post-conviction relief, the state district court observed that Colorado does not recognize the defense of "temporary insanity." [# 13-4, at 28 (citing *People v. Sommers*, 200 P.3d 1089, 1093 (Colo. 2008)].

---

[9]State Court R. 2/7/02 Trial Tr., at 180-188.

[10]*See generally* State Court R. (Dr. Pinto-Bernhard's written mental health evaluation of Applicant, filed in Arapahoe County District Court under seal on May 28, 2002).

The district court determined that there was no evidence to indicate that defense counsel's attempts to retain an insanity expert fell below acceptable standards of professional conduct, based on the following evidence: three experts evaluated Applicant, including one retained by Applicant, but none of them was willing to testify that, on the date of offense, Applicant suffered from a mental disease or defect which prevented him from distinguishing between right and wrong or from forming the requisite culpable mental states for the offenses charged; and, defense counsel did elicit from testimony at trial from the People's psychiatrist that was favorable to Applicant. [*Id.* at 28].

Again, the Colorado Court of Appeals adopted the district court's findings of fact and conclusion of law *in toto.* [*Bell II*, # 13-2, at 6-7]. I find that the state appellate court's disposition of Applicant's claim, in affirming summarily the state district court's ruling, was reasonable based on the evidence presented in the state court and comported with *Strickland.* As discussed above, none of the three expert witnesses who evaluated Applicant before trial opined that Applicant was insane at the time of the offenses. Again, *Strickland* requires that an attorney conduct reasonable, not exhaustive investigations. *See*, *e.g.*, *Rompilla*, 545 U.S. at 382-83; *Bullock*, 297 F.3d at 1046.

Moreover, Applicant does not identify any expert witness who would have testified that he was legally insane at the time of the offenses. *See Snow v. Sirmons*, 474 F.3d 693, 724-25 (10th Cir. 2007) (rejecting ineffective assistance of counsel claim when habeas petitioner failed to indicate "why counsel's failure to object to the evidence was deficient and how such alleged failure prejudiced him"); *Cummings*, 506 F.3d at

1233 (holding that a petitioner's ineffective assistance claim failed to satisfy *Strickland*'s

first prong because nothing demonstrated the content of a potential expert's testimony).

I thus find that Applicant cannot prevail on claim 2(b).

### 4.  claim 2(c)

For his final claim, Applicant maintains that defense counsel prevented him from

testifying in his own defense by advising him incorrectly that his juvenile convictions

could be used against him.

At the state post-conviction evidentiary hearing, the district court credited

defense counsel's testimony over that of the Applicant.  The state district court made

the following findings of fact relevant to this claim:

> [Applicant] decided on his own not to testify at trial.  Mr. Stavish did not
> recall advising [Applicant] that his juvenile adjudication would be brought
> up and used against him on cross-examination if he took the witness
> stand.  His understanding at the time of the trial was that juvenile
> adjudications could not be brought up on cross-examination to impeach a
> witness' credibility.  The typical advisement he gave his clients at the time
> was consistent with the *Curtis* advisements provided by trial court.  He
> generally told his clients that only felony convictions could be used to
> attack their credibility on cross-examination if they chose to testify.

[# 13-4, at 19].[11]

In rejecting Applicant's claim, the state district court first observed that under

Colorado law, a "'juvenile adjudication is not a felony conviction and . . . may not be

used to impeach an adult defendant in a criminal trial.'" [*Id.* at 29 (quoting *People v.

Peek*, 937 P.2d 891, 892 (Colo. App. 1996)].  The district court then concluded that,

contrary to Applicant's incredible testimony, defense counsel did not tell Applicant that,

---

[11] *See also* State Court R. 5/11/11 Tr. of Post-Conviction Hrg, at 51.

if he chose to testify, the prosecution would be allowed to use any juvenile adjudications to impeach his credibility on cross-examination.  Instead, "after being properly advised by Mr. Stavish pursuant to *People v. Curtis*, 681 P.2d 504 (Colo. 1984),[12] [Applicant] made the decision not to testify at trial."  [*Id.* at 30].  As such, the district court ruled that Applicant's claim failed to meet either prong of the *Strickland* inquiry.  [*Id.* at 30].  The Colorado Court of Appeals affirmed summarily the district court's factual findings and conclusions of law. [*Bell II*, # 13-2, at 6-7].

Credibility determinations made by the state trial court are factual findings which are presumed correct in this federal habeas proceeding.  *See Mitchell v. Gibson*, 262 F.3d 1036, 1059 (10th Cir. 2001); *Romano v. Gibson*, 239 F.3d 1156, 1175 (10th Cir. 2001).  Applicant does not point to any clear and convincing evidence to refute the state court's factual findings that he received an adequate advisement concerning his constitutional right to testify pursuant to *People v. Curtis*.  Moreover, *Curtis* does not require that a defendant in an adult felony trial be advised that, if he or she elects to testify, the prosecutor will not be able to use Colorado juvenile adjudications to impeach his or her credibility.  *Peek*, 937 P.2d at 892-93.  Accordingly, because Applicant has

---

[12]In *Curtis*, the Colorado Supreme Court held that in order for a trial court's advisement on the right to testify to meet constitutional standards, it must advise the defendant on the record:

> that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility.... [T]he defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.

*Curtis*, 681 P.2d at 514.

failed to demonstrate that defense counsel advised him improperly concerning his right to testify, I find that the state appellate court's resolution of Applicant's ineffective assistance of counsel claim did not run afoul of *Strickland* and was reasonable based on the evidence presented in the state court proceeding.  I thus find that Applicant cannot prevail on claim 2(c).

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [# 1], filed November 6, 2012, by Applicant Gregory Bell, is **DENIED**;

2. That this case is **DISMISSED WITH PREJUDICE**;

3. That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); and

4.  Leave to proceed *in forma pauperis* on appeal is denied; provided, further that Applicant may file a motion to proceed *in forma pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit.

Dated July 16, 2013, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge